UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SOLOMON SHAMI, | ) |
| | ) |
| Plaintiff, | )   09 CV 722 (RRM)(VVP) |
| | ) |
| v. | ) |
| | ) |
| NATIONAL ENTERPRISE SYSTEMS, INC., | ) |
| | ) |
| Defendant, | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Defendant a debt collector has indicated to the consumer that he will be charged a "transaction fee" if he makes payment through its automated phone system or via the internet. (Defendant's Exhibit A). This is specifically stated within the debt collector's collection letter. Prior to this statement within the letter the consumer is informed that the amount due on the day you pay may be greater than the amount stated within the letter and suggests that the consumer can expect to hear from the debt collector with any additional amounts owed if payment is sent through the mail. (Exhibit A). The import of the letter is clear: The consumer can avoid these additional charges if he avails himself of the automated or internet payment system, and by doing so no further payments will be necessary (Exhibit A).

I.    THE FAIR DEBT COLLECTION PRACTICES ACT

The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. §1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 1997 U.S. App. LEXIS 5000 at *5 (7th Cir. 1997); *Baker v.*

*G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, and 1692f. Statutory damages are recoverable for violations, whether or not the plaintiff proves actual damages. *Baker*, 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.*, 783 F.Supp. 724, 727 and n.3 (D.Conn. 1990); *Cacace v. Lucas,* 775 F.Supp. 502 (D.Conn. 1990); *Riveria v. MAB Collections, Inc.*, 682 F.Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Technol.*, 865 F.Supp. 1443, 1450 (D.Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles*, 90 B.R. 669, 680 (Bankr. E.D.P. 1988), *aff'd as modified sub nom. Crossley v. Lieberman*, 90 B.R. 682 (E.D.Pa. 1988), aff'd 868 F.2d 566 (3d Cir. 1989).

Whether a communication or other conduct violates the FDCPA is to be determined by analyzing it from the perspective of the "least sophisticated debtor." *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993); *Taylor v. Perrin, Landry, de Launday & Durand,* 103 F.3d 1232, 1997 U.S.App. LEXIS 1637 (5th Cir. 1997); *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991); *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1028-9 (6th Cir. 1992); *Swanson v. Southern Oregon Credit Service, Inc.,* 869 F.2d 1222, 1225-6 (9th Cir. 1988); *Jeter v. Credit Bureau, Inc*. 760 F.2d 1168 (11th Cir. 1985); *Russey v. Rankin*, 911 F.Supp. 1449 (D.N.M. 1995); *Bukumirovich v. Credit Bureau of Baton Rouge Inc.,* 155 F.R.D. 146 (M.D.La. 1994); *United States v. National Financial Servs.*, 829 F.Supp. 228, 232 (D.Md. 1993), aff'd, 98 F.3d 131, 135, 1996 U.S.App. LEXIS 26645 (4th Cir. 1996).

"The basic purpose of the least-sophisticated consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon, supra*.

The FDCPA provides that within five days of the initial communication with a consumer, a debt collector must send a consumer written notice which contains the amount of the debt, and indicates that he has the right to dispute the debt, within thirty days from receipt of the letter, with the debt collector, and that in the event of such a written dispute, the debt collector will obtain verification and mail a copy of the same to the consumer. 15 USC § 1692g. The act further provides that if the consumer notifies the debt collector in writing of such a dispute all collection activity shall cease until verification is mailed to the consumer. 15 USC § 1692g(b).

This act is violated even when notice is given when the message given is "reasonably susceptible to an inaccurate reading." The standard applied is an objective standard measured by how even the 'least sophisticated consumer' would interpret the notice received by the debt collector. *Russel v. Equifax A.R.S.* 74 F.3d 30, 35 (2d cir. 1996). A communication is deceptive for purposes of the Act if "it can be reasonably read to have two or more different meanings, one of which is inaccurate." Rosenau v. Unifund Corp., 539 F.3d 218, 222 (3d Cir. 2008) (quoting Brown v. Card Serv. Ctr., 464 F.3d 450, 455 (3d Cir. 2006)). In order to give effect to the Act's intent to "protect [] the gullible as well as the shrewd," Brown, 464 F.3d at 453 (quoting Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993)), courts have analyzed the statutory requirements "from the perspective of the least sophisticated debtor." Rosenau, 539 F.3d at 221 (quoting Brown, 464 F.3d at 454). The question presented is whether the debt collector has failed to clearly and effectively communicate to the consumer his/her rights and thereby has made the least sophisticated

3

consumer uncertain of his/her rights under the act. *Savino v. Computer Credit, Inc*. 164 F.3d 81, at 85 (2d Cir. 1998).

It is the purpose of this title [15 USCS §§ 1692 et seq.] to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses. 15 U.S.C. §1692.

## II. ADDITION OF FEES AND CHARGES UNDER THE FDCPA

Section 1692f of the FDCPA prohibits "unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:... (l) [t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law". The FDCPA also prohibits "[t]he false representation of . . .(A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt". 15 U.S.C. §1692e(2).

The Federal Trade Commission has interpreted this language to mean that "A debt collector may attempt to collect a fee or charge in addition to the debt if either (a) the charge is expressly provided for in the contract creating the debt and the charge is not prohibited by state law, or (b) the contract is silent but the charge is otherwise expressly permitted by state law. Conversely, a debt collector may not collect an additional amount if either (a) state law expressly prohibits collection of the amount; or (b) the contract does not provide for collection of the amount and state law is silent." Federal Trade Commission

4

Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. 50,097 at 50, 108 (Dec. 13, 1988),

This is the rule followed by the courts, "Whether the collection of a debt violates §1692f(l) depends solely on two factors: (1) whether the debt agreement explicitly authorizes the charge; or (2) whether the charge is permitted by law." Turner v. J.V.D.B. & Assocs., Inc., 330 F.3d 991, 996 (7th Cir. 2003).  "Under this provision, it is unconscionable for a debt collector to collect any amount in excess of the principal amount of a loan, *including collection charges*, unless these charges are authorized expressly by the terms of the agreement creating or evidencing the debt or unless the charges are authorized explicitly by applicable state law."  Patzka v. Viterbo College, 917 F. Supp. 654, 658 (W.D. Wisc. 1996) (emphasis added).  See also, West v. Costen, 558 F. Supp. 564 (W.D.Va. 1983); Tuttle v. Equifax Check, 190 F.3d 9, 13 (2nd Cir. 1999); Pollice v. National Tax Funding L.P., 225 F.3d 379, 408 (3rd Cir. 2000).

Defendant claims that §1692f(l) allows a debt collector to enter into a "subsequent agreement," other than the one creating the debt, to perform "services" for the debtor and charge a fee therefor, and that their "transaction fee" is permissible under such rationale.

Pursuant to the FDCPA, defendant's transaction fee for payment by phone and over the internet is illegal.

### A.   COLLECTION OF ANY AMOUNT

The FDCPA forbids defendant's fees in all cases.  Section 1692f(l) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to

5

the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." A "subsequent agreement" is not "the agreement creating the debt." Under the plain language of the statute, any charge which can only be justified by resort to an agreement other than the agreement creating the debt is forbidden.

The Third Circuit has expressly rejected the argument that a debtor can enter into an agreement with a debt collector that justifies the imposition of fees not provided for in the underlying obligation. In <u>Pollice v. National Tax Funding</u>, <u>supra</u>, 225 F.3d 379,408 (3d Cir. 2000), defendants had purchased delinquent water and sewer bills and entered into payment plans with the debtors at rates of interest prohibited by state law. In finding a § 1692f(l) violation, the Third Circuit expressly held that an FDCPA "debt collector" could not rely on a post-default agreement between the debt collector and the debtor to justify exaction of amounts not authorized by the agreement creating the debt:

> Under the interpretation set forth in the Staff Commentary and <u>Tuttle</u>, the defendants presumably have violated section 1692f(l) regardless of the presence of any agreement authorizing the rates of interest and penalties, because state law specifically prohibits charging interest in excess of ten percent on the assigned claims. In any event, we do not believe the rates defendants charged are "expressly authorized by the agreement creating the debt." Although the agreement need not be in writing, we believe the term "expressly authorized by the agreement creating the debt" requires some actual knowledge or consent by the consumer during the course of the transaction which gives rise to the debt. As we have indicated, the "debts" which defendants have undertaken to collect are homeowners' original obligations arising out of their subscription to water and sewer services. The "agreement creating the debt" therefore was the transaction between each homeowner and the relevant government entity relating to the provision of water and sewer services. Defendants do not contend that the interest and penalty rates were "expressly" set forth in these agreements or transactions, nor do they contend that homeowners actually consented to or were aware of the rates when they subscribed to the services. The most defendants can say is that the rates were made an implicit part of such transactions because they are set forth in municipal ordinances and resolutions. "We do not believe this suffices. <u>Nor can defendants rely on the payment plans as the plans, are not the "agreement creating, the debt,"</u> Rather, as stated, the "debts" to which all

6

> <u>of defendants' collection activities have been directed are the original water and sewer obligations, which arose out of the transactions between homeowners and the government entities</u>.
>
> Thus, we conclude that defendants have violated section 1692f(l) by collecting amounts not expressly authorized by the agreement creating the debt or permitted by law. (Emphasis added)

The correctness of the Third Circuit's holding is shown by the fact that in at least two places the FDCPA explicitly allows otherwise-prohibited conduct where authorized by a "subsequent agreement" between the debtor and the debt collector.  Sections 1692c(a) and l692c(b) allow certain third party communications with "the prior consent of the consumer given directly to the debt collector . . . ." Congress thus knew how to authorize agreements between consumers and debt collectors when it desired to do so.  It did so in enacting §§1692c(a) and (b).

Defendant's argument would have the effect of inserting similar language in § 1692f(l).  Defendant effectively asks the Court to rewrite §1692f(l) as prohibiting '[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law, *or is charged with the prior consent of the consumer given directly to the debt collector*." Of course, the italicized language was not actually included by Congress.

Courts are not free to rewrite statutes in the guise of "statutory construction." "We must faithfully apply the law as Congress drafted it.  We should not disregard plain statutory language in order to impose on the statute what we may consider a more reasonable meaning."  <u>Jenkins v. Heintz</u>, 25 F.3d 536, 539 (7th Cir. 1994), aff'd, 514 U.S. 291 (1995).  The reference to the "agreement creating the debt" coupled with the omission of the

7

"consent" language in §1692f(l) when it is present elsewhere in the statute, must be treated as Congressional prohibition of "subsequent agreements" between debt collectors and debtors for the collection of fees and charges not provided for in the agreement creating the debt. Aubert v. American General Finance, Inc.. 137 F.3d 976 (7th Cir. 1998). "[W]here Congress uses a particular phrase in one section but omits it in another, the difference in language is presumed to be intentional. See Russello v. U.S.. 464 U.S. 16, 21 (1983)." Deberry v. Sherman Hosp. Ass'n, 769 F, Supp. 1030, 1033 (ND. ILL.1991).

In Aubert, a similar argument was rejected. That court held: "[O]ur role, when the language of a statute is plain, is to enforce that statute according to its terms. See, e.g., Central States v. Bell Transit Co., 22 F.3d 706, 710 (7th Cir. 1994), . . . [W]hile Congress prescribed two conditions for the exclusion of corporate affiliates under §1692a(6)(B), it did not prescribe the third condition that Aubert asks us to read into the statute. Should Congress desire to eliminate this loophole, it is, of course, free to amend the FDCPA and add conditions to the § 1692a(6)(B) exclusion. We, however, do not enjoy that freedom. 'We are bound by the particular rules enacted by Congress and are not free to carve out our own exceptions merely because we believe that they would best serve Congress' policies and goals.' Central States, 22 F.3d at 710." (Aubert, 137 F.3d at 979)

In short, under the plain language of the FDCPA, defendant's fee is prohibited. Defendant's motion should be denied. The Court cannot allow fees to be imposed pursuant to an agreement between the debtor and the debt collector when Congress expressly limited §1692f(l) to the "agreement creating the debt" and intentionally omitted language about agreements between the debtor and the debt collector found elsewhere in the FDCPA.

8

B.     DEFENDANT'S CASES

Defendant relies on four cases: <u>Mann v. National Asset Management</u>, 04 CV 1304 (USDC CENTRAL DIST OF ILLINOIS, 2004),, <u>Lee v. Main Accounts. Inc.</u>, 1997 U.S.App. LEXIS 27922 (6th Cir. Oct. 6, 1997), the district court decision in <u>Lewis v. ACB Business Services, Inc.</u>, 911 F. Supp. 290 (S.D. Ohio 1996), and <u>DuBois v. Ford Motor Credit Co.</u>, 276 F.3d 1019 (8th Cir. 2002).

In <u>DuBois</u>, Ford Credit required that a debtor who had received a bankruptcy discharge pay part of the discharged debt as a condition of entering into another financing agreement with him.  The court held that this did not violate the discharge injunction or (assuming that Ford Credit was even a debt collector) the FDCPA.  Agreements subsequent to discharge to pay a discharged debt are allowed.  This case does not appear to be relevant at all.

In <u>Lewis,</u> a debt collector offered the debtor the option of charging payments to a Visa or MasterCard without charge or using an "American Express Moneygram" if the debtor paid American Express' processing fee.  The court, in addition to holding the claim barred by the statute of limitations, held that there was no FDCPA violation because "any such fee, voluntarily chosen by the debtor if he or she chose this payment option, would not be paid to ACB or any entity it controlled and was a standard fee charged by the processor of the payment, an independent entity."  If the fee was simply the fee charged by American Express when it wires money to anyone the case is unexceptional.  If a financial institution selected by the debtor charges for checks, wire transfers, or other transactions, that is between the financial institution and the debtor -- such charges are simply not fees collected or attempted to be collected by the debt collector.  911 F. Supp, at 292-93.

9

In Lee, a debt collector passed on to debtors who paid by Visa the 5% charge imposed on the debt collector by the Visa credit card service provider. The court, after noting that the debt collector did not receive any portion of the fee, decided that it was "not a fee collected by Main Accounts, but a third-party charge triggered when the debtor chose the option of paying by credit card." 1997 U.S.App. LEXIS 27922 at *2.

None of the cases cited help defendant. The fees charged by defendant here go directly into defendant's pocket, and do not represent a mere pass-on of amounts charged by a third party. Even Lee would have found a violation if the debt collector or an affiliate kept the fees.

Moreover, the Lee case is wrongly decided. While the case refers to the usual fee that credit card companies charge merchants for processing credit card invoices as a "third party charge," it is actually received by the debt collector. And while the fee reimburses the debt collector for a cost which it pays, businesses normally absorb the fee charged by the credit card processing company as a cost of doing business, just as salaries, rent and electricity. Consumers who walk into a store and pay by credit card are not ordinarily made to pay extra for the privilege. That fee is normally not 5%, but less.

The *Mann* case involved a fee for the privilege of paying the debt via the collectors check by phone system. While the court in *Mann* noted that a violation of 1692f(1) could occur regardless of whether a collection attempt was successful, it concluded that an attempt to collect an otherwise unauthorized fee, was not a violation as it was not being demanded as part of the amount of the debt but was simply a charge for an additional service.

10

As written by Congress, §1692f(1) imposes a simple, bright line rule that makes such inquiries irrelevant. "Whether the collection of a debt violates §l692f(l) depends solely on two factors: (1) whether the debt agreement explicitly authorizes the charge; or (2) whether the charge is permitted by law." Turner v. J.V.D.B. & Assocs., Inc., supra, 330 F.3d 991, 996 (7th Cir. 2003). The statute does not say anything about whether the consumer entered into an agreement with the debt collector to pay the fee, or the circumstances of such agreement. As noted earlier, a post-default agreement between a consumer and a debt collector for the payment of fees that cannot be justified under the agreement creating the debt or applicable law is fraught with potential overreaching and abuse. The Court should apply the plain language of §1692f(l) as written rather than inquire into whether charges are for a separate "service" provided under some claimed subsequent agreement, whether any part of the charges is retained by the debt collector, and whether the consumer's election was really "voluntary."

Defendant would have the Court inquire into such matters as part of an effort to revise the FDCPA to improve the profitability of debt collectors. However, that is not an interest protected by the FDCPA. On the contrary, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. Cirkot v. Diversified Fin. Services, Inc., 839 F. Supp. 941 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

N.C. Freed Co. v. Board of Governors, 473 F.2d 1210, 1214 (2d Cir. 1973).

11

The Court "must examine the underlying purposes of the statute to discern its meaning." Jacobson v. Healthcare Fin. Servs., 516 F.3d 85, 95 (2d Cir. N.Y. 2008) Given that the "Act is primarily a consumer protection statute", the statute should be interpreted in a way that protects the interests of the paying consumer who is being burdened with a fee that has no basis in law or in contract.

The plain language of the FDCPA prohibits debt collectors from charging fees that are not authorized by the agreement creating the debt or by applicable statutes and regulations. Defendant's fees are neither. Subsequent agreements between debtors and debt collectors are authorized for other purposes by the FDCPA, but not as a justification for adding fees to the debt. Defendant's arguments based on such alleged subsequent agreements are impermissible and must be rejected.

### III. DEFENDANT'S CONDUCT WAS FALSE, MISLEADING AND DECEPTIVE.

Defendants argues that there is no violation of 15 U.S.C.§ 1692e. Defendant is wrong. Section 1692e states in pertinent part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> ****
> (2) The false representation of
>
> > (A) the character amount, or legal status of any debt; or
> > (B) any services rendered Or compensation which may be lawfully received by any debt collector for the collection of a debt.
>
> ****
> (10) The use if any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Attempting to collect a fee for a payment method implies that the debt collector is permitted to collect that fee. As described above, the fee is illegal. Because the fee is illegal, asking for it at all is (1) a false representation of the "compensation which may lawfully received" under §1692e(2); and (2) a deceptive means to attempt to collect a debt under §l692e(l0). See Fields v. Wilber Law Firm, P.C., 383 F.3d 562, 2004 U.S. App. LEXIS 18681 at *7-8 (7th Cir. 2004).

## IV. CONCLUSION

For the reasons stated above, the defendant violated the statue. Defendant's motion should be denied.

s/Lawrence Katz

**Attorney for Plaintiff**

Lawrence Katz
Law Offices of Lawrence Katz
445 Central Avenue, Suite 201
Cedarhurst, New York 11516
(516) 374-2118

.