1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

SOLOMON E. SHAMI
                                    :
                Plaintiff           09-CV-0722 (RMM)

    -against-                       :    U.S. Courthouse
                                         Brooklyn, N.Y.
NATIONAL ENTERPRISE
SYSTEMS, INC.

                Defendant     :
                                    April 11, 2011
- - - - - - - - - - - - - - X    12:00 p.m.

BEFORE:

        HONORABLE ROSLYNN R. MAUSKOPF
           United States District Judge


APPEARANCES:

For the Plaintiff:        LAWRENCE KATZ
                          445 Central Avenue
                          Suite 201
                          Cedarhurst, New York 11516




For the Defendant:        KAUFMAN BORGEEST & RYAN, LLP
                          120 Broadway
                          New York, New York 10271
                          BY:  JONATHAN B. BRUNO




Court Reporter:           RONALD E. TOLKIN, RPR, RMR, CRR
                          225 Cadman Plaza East
                          Brooklyn, New York 11201
                          718-613-2647

1          THE COURT:  Good afternoon.

2          THE CLERK:  Civil cause for conference, Docket No.

3    09-CV-722, Shami versus National Enterprise Systems, Inc..

4          Will counsel please note their appearances for the

5    record.

6          MR. KATZ:  Lawrence Katz for the plaintiff.

7          Good afternoon, Your Honor.

8          THE COURT:  Good afternoon.

9          MR. BRUNO:  Good afternoon, Your Honor.

10   John Bruno for the defendant.

11         THE COURT:  Good afternoon.

12         The defendant has requested a pre-motion conference

13   here.  You've already had one round of motions, a motion to

14   dismiss, and now the defendant wants to move for summary

15   judgment.

16         Let me just ask, first, where things stand in terms

17   of discovery, because the request for a pre-motion conference

18   was made back in January with a response from the plaintiff in

19   February.

20         Mr. Katz, in his letter -- in your letter, Mr. Katz,

21   you make -- you have some concerns about discovery that you

22   would need for this motion.  For example, the contract, full

23   version of the contract regarding the fees.

24         Where do those things stand?

25         MR. KATZ:  Judge, after today's conference with Your

1  Honor, we're going over to Judge Pohorelsky.  I imagine that

2  those issues will be mostly resolved.  Although judge

3  Pohorelsky did not feel that certain information regarding the

4  charges that were made were necessary to disclose at this time

5  and that we would be able to go forward without some of that

6  information.

7         But I think the quick answer is that after meeting

8  speaking Judge Pohorelsky today, we'll have a better picture

9  of where we are on those issues.  I was primarily concerned at

10 the time I wrote the letter with the fact that I was given

11 only part of the contract.

12        THE COURT:  Right.

13        MR. KATZ:  I've now been told, after being given

14 additional documents, that I now have the full contract.

15 Although, given the standard here that we're talking about

16 with this contract, I think I'm also entitled to various

17 correspondence which may either amend the contract itself or

18 actually demonstrate what the view of the parties were in

19 terms of what this contract said their obligations were.

20        But I do think, Judge, that even just based on what

21 I have, the point of the defendant that this is somehow third

22 party charges and so they're inclined to Western Union, I

23 don't think that it carries much weight.

24        THE COURT:  So from your reading of the documents

25 that you have already gotten, does it appear that the

1  defendant gets a piece of the fee?  Where do things stand now?

2  We're doing this a little bit backwards.

3          MR. KATZ:  Yes, Judge.  It would appear that the

4  defendant is in total control of what the fee is.  And

5  further, while they call this contract party a third-party,

6  it's a third-party in the sense that -- they are obviously a

7  third party, but they're simply doing the work of the

8  defendant.

9          In other words, it's not just that the third-party

10  gets the additional fee.  The third party collects all the

11  money, from what I can tell.  And essentially it's just a

12  provider that essentially runs their web site for them.

13          THE COURT:  Which is not uncommon in debt collection

14  practices.

15          MR. KATZ:  I don't think it's uncommon in all of

16  collections whether creditors or debtor practices.

17          The question then becomes, what is this fee.  And if

18  you look at the contract, it talks about a base fee and it

19  also talks about different amounts for different amounts

20  collected and it talks about different amounts for different

21  vendors.

22          In other words, the creditors or the other debt

23  buyers that the defendant is collecting on behalf of seem to

24  have different rates for whatever reason.  So I'm not sure

25  where they're going with all this, Judge.

1            But I will say this, Judge, in terms of the decision

2    that Your Honor wrote as well as the statements made by the

3    defendant at the last pre-motion conference, they had said

4    there was nothing else that was needed.

5            Your Honor, actually, in her decision said well, we

6    could use the Bank of America contract which is the underlying

7    credit contract to see if Bank of America, in fact, has a

8    contract that says these fees are allowable.

9            That hasn't been produced.  I should say, to the

10   extent that they basically said that is not the case.  So

11   there goes that issue.

12           THE COURT:  When you say they said that's not the

13   case?

14           MR. KATZ:  They don't have a contract that says Bank

15   of America with our client can charge these fees.  It's not an

16   issue.  It goes back to their statement from the other

17   pre-motion which said that this is all that is needed.  Now

18   we're finding out they have a contract with the third-party.

19   Oh gee, isn't that a defense.

20           I don't think it's a defense even if they had raised

21   it.  It seems to me when they came to the last pre-motion

22   conference they said there were no other issues.  Frankly, I

23   don't think it is an issue, Judge.

24           THE COURT:  Are you suggesting that you would move

25   for summary judgment?

1          MR. KATZ:  Well, Judge, I intend to move for class

2   certification.  I am going to move for summary judgment.  It

3   seems to me it's appropriate for me to move either judgment on

4   the pleadings or summary judgment, if you will, at this

5   juncture.  Obviously that would be more appropriate.

6          THE COURT:  My only question is, at this stage,

7   whether or not the motion, any motion, is ripe given the

8   information that has been turned over to this point.

9          Let's put class certification aside.  Let's just

10  talk about discovery on the underlying issue, the fee issue.

11  It seems like you've gotten more, Mr. Katz, but is there -- is

12  this motion premature?

13         MR. KATZ:  I think it may be somewhat premature.  I

14  don't know what Judge Pohorelsky is going to do on some of the

15  issues and what we will get.  I'd just emphasize, Judge, that

16  I think, even just based on the document, I don't understand

17  where they're going, frankly.

18         THE COURT:  Well, let me ask Mr. Bruno where they're

19  going.

20         MR. BRUNO:  Thank you, Your Honor.

21         THE COURT:  And why isn't this motion premature at

22  this stage?  You're asking me to find as a matter of law that

23  you are entitled to summary judgment.

24         MR. BRUNO:  Well, we've already appeared before the

25  magistrate.  Today we're supposed to appear before the

1  Magistrate just an update of what's transpired.

2          Mr. Katz is correct, we produced the entire

3  agreement, the addendum to the agreement.  However, he's

4  incorrect as far as the service charges.  He's referring to

5  the service charges that the third party vendor is able to

6  collect from the debtor.  Their services for collecting based

7  on the amount they can collect.

8          What we're talking about here is the fee.  That's

9  the only issue in this case, that fee.  Is that charged and

10 has my client taken that.  The answer to that is unequivocally

11 no.  The contract indicates as much.  My client's prepared to

12 provide affidavits as well as getting affidavits from the

13 vendors to that fact.

14         THE COURT:  So you're suggesting that Mr. Katz is

15 inflating two things.

16         MR. BRUNO:  Service, the overall service that this

17 third-party provided to my client where they charge a fee to

18 my client, which is not charged to the debtor.  And then the

19 actual fee to pay either by phone or online.

20         The language in the contract says that the -- it's

21 not controlled by my client.  The language in the contract

22 says it can be agreed that the third-party will charge the

23 debtor directly for that fee.

24         My understanding is that is what happens --

25 actually, it didn't even happen in this case.  The plaintiff

1   was never charged because the plaintiff never called and never

2   paid.

3           THE COURT:  It raises an issue about class

4   certification and whether or not this plaintiff can be a class

5   representative?

6           MR. BRUNO:  Absolutely, Your Honor.  That was

7   discussed with the magistrate as well.  This motion is ripe.

8   I'm not sure what other discovery is out there.  There are

9   some ancillary discovery issues.  But they have to do with --

10  we just got a protective order signed by the magistrate and we

11  will be producing some information pursuant to that.

12          But as far as our request that Plaintiff produce

13  documents to us and vice-versa, any outstanding discovery that

14  might be out there, we feel, is immaterial to the motion.

15  This motion is ripe, Judge.

16          THE COURT:  What about that, Mr. Katz, the

17  difference between what I'll call the cut that can be charged

18  for the amount of money actually collected on the debt versus

19  the very narrow transaction fee?

20          MR. KATZ:  Well, Judge, I would say in the first

21  instance that if you this document, nothing is clear other

22  than the fact that Defendant can do whatever they want to do.

23          This is not where you go into a company that charges

24  you $5 for taking a payment.  This is a company hired by the

25  defendant and the defendant has contracted and done whatever

1  it wishes to do.

2          After reading these documents, Judge, you cannot

3  tell what it is exactly that is transpiring here other than

4  there are fees being imposed upon the consumer by the

5  defendant.  That is clear.

6          THE COURT:  Okay.  On what do you base that?

7          MR. KATZ:  I base it on the documents that say

8  essentially that Defendant can, if it wants, charge the

9  consumer, can, if it wants, not charge the consumer.

10         THE COURT:  Mr. Bruno is shaking his head no.

11         MR. KATZ:  And further, that the document also

12 indicates that there is a fluctuation that does not seem to

13 have anything to do with the contract between the defendant

14 and the third-party.

15         So Judge, part of the problem here is that they

16 don't want to give me any documents that disclose what it is

17 that they've done.  So for example, Judge, I've asked how much

18 was the consumer charged and which consumer was charged how

19 much.  They don't want to give that document.  Why would they

20 give that document.  It seems to me, Judge, I would run to

21 give the document, Judge.  I would run to show you that

22 everyone that was charged a dollar, okay, that dollar went

23 directly to the third party.  That's what I would do, Judge,

24 but they're not doing it.

25         THE COURT:  Okay.  I understand where you're coming

1  from.  I want to focus in on what discovery -- I will not

2  order discovery, but what discovery would you need in order to

3  address this motion?

4          MR. KATZ:  Well, Judge, I am suggesting that I need

5  just that, I need them to show me.  They're claiming, they

6  stood up now and they said that the payments they've

7  collected, they were not collected by the defendant.  They did

8  not go to the defendant.  They went to the third party.  There

9  was a third party fee and it's the third party that imposes

10  the fee.  I don't see it from any of the documents, Judge, as

11  I said.  I don't think anyone can see it from these documents.

12  In fact, the documents very clearly spell out Defendant has

13  total control as to who will be charge.

14          Again, Judge, I think that -- although I'll make

15  various arguments, and I certainly will make the argument that

16  where you have a defendant who hires a third party, it can't

17  pass along the cost of the third party.  It's one thing to say

18  that it's set up with a third party who charges the consumer a

19  dollar, although I can make the argument that's not legal

20  either, but assuming for a moment that it were, that's not

21  this case at all.

22          THE COURT:  But we're not ever there yet.  We're not

23  even at the law and what the incidental what mean, what

24  deceptive might mean.  We're not even talking about that.  I'm

25  trying to make sure that we know the undisputed facts.  If

1   there is discovery that is still required to establish the

2   undisputed facts here, then this motion is premature.

3            MR. KATZ:  I would say that that's correct, Judge.

4            THE COURT:  So Mr. Bruno, let me turn to you again.

5   What about those types of things that Mr. Katz would like to

6   have that shed light on what he claims are somewhat ambiguous

7   or broad contracts?

8            MR. BRUNO:  Right.  I'm not sure specifically what

9   he's referring to.  We actually produced some correspondence

10  or e-mails related to -- I can be mistaken -- but related to

11  the contract.

12           I know when we last appeared before the magistrate,

13  I was ordered -- or my client was ordered to produce any

14  documents related to specific language, I think, in the

15  letter.  I don't think that has been produced yet.  But my

16  client's in the process of investigating if any such

17  correspondence exists.  And we'll certainly produce it.

18           If Your Honor is inclined to rule that this motion

19  is premature, then I'm inclined to request a clear cut off

20  date.  I disagree.  I don't think it's premature.  But it

21  seems like there's only a little bit of discovery that's

22  outstanding that's left.

23           THE COURT:  But if you're so certain that the

24  contract itself says we don't take a cut of the transaction

25  fee, where is that?  Can you quote me that language?

1          MR. BRUNO:  No.

2          THE COURT:  There seems to be a dispute right here

3     as to what the contract says.

4          MR. BRUNO:  Right.  And I think it's because part of

5     Mr. Katz, obviously, has not deposed my client.

6          THE COURT:  That's another thing.

7          MR. BRUNO:  He hasn't deposed the third party.  This

8     is insufficient.  He hasn't sent a deposition notice.  This is

9     information that I have that I've realized would be in support

10    of my motion and I think it's dispositive on the issue.

11         THE COURT:  It may be.

12         Mr. Katz, what about that?  Have you requested the

13    information?

14         MR. BRUNO:  Judge, excuse me for interrupting.  But

15    suppose he does depose my client and he does depose the vendor

16    and both of them say yes, other than that, he's just

17    confirming what my client's position already is.  I'm not sure

18    what further discovery or how he would ever be able to contest

19    that from his client.

20         THE COURT:  He may not be.  And one of the reasons

21    why I wanted to hone in on the documents and the process and

22    try and figure out what the facts are here, is that perhaps no

23    motion practice is necessary.

24         Although, what I hear Mr. Katz saying is even if the

25    defendant doesn't take a piece of the transaction fee from the

1    consumer, that there's another theory under the FDCPA that he

2    intends to argue.  But again, this all depends on what the

3    facts are.

4            One of the hazards of the bifurcation of

5    responsibility between magistrate judge and the district judge

6    is that I don't have the feel for what requests have been made

7    and what is outstanding.

8            So Mr. Katz, have you requested this information?

9            MR. KATZ:  Yes, Judge, I have requested the

10   information.

11           THE COURT:  It seems to me that you all should be

12   able to quickly get to the bottom of this transaction fee, the

13   contract, the practices.

14           Mr. Katz you intend to take depositions on this?

15           MR. KATZ:  No, Judge.  I don't believe depositions

16   are necessary here.  We have, under the FDCPA, we have a

17   letter.  And on the face of it, it violates the FDCPA.

18           THE COURT:  How so?

19           MR. KATZ:  Because, Your Honor, it asks for a fee

20   that it is simply not allowed to ask for.  Their argument that

21   it is somehow not their fee, okay, is something that they're

22   going to have to show.

23           I have the document.  The documents clearly don't

24   show that.  So unless somebody is going to put in affidavits

25   that contradict these contracts, it seems to me they're not

1    going to get anywhere with the argument that because it's a

2    third party that collects it, that they're somehow not in

3    violation.

4              THE COURT:  But you heard Mr. Bruno say he will put

5    in affidavits.

6              MR. KATZ:  I understand, Judge.  And I will

7    demonstrate that, in fact, it's not the case, just based on

8    the contracts.  He will not be able to contradict his own

9    contract by putting in some affidavit.

10             It seems to me, Judge, again, if I have the

11   information regarding what happens with these payments, we'll

12   be able to show exactly what it is that they're doing in terms

13   of each consumer.

14             THE COURT:  How do you intend to ascertain exactly

15   what they're doing with these payments?

16             MR. KATZ:  In other words, Judge, that's -- that's

17   some of the information that I've asked for.

18             THE COURT:  Without depositions?

19             MR. KATZ:  Without depositions, Judge.

20             They have an accounting wherein, when somebody goes

21   online and makes a payment, they are now paying a fee.  I'm

22   entitled to that information.  That information is

23   documentary.  They know how much they charge consumers.  They

24   know which consumers they charge and how much.  I'm entitled

25   to that information.

1       THE COURT:  If the defendant doesn't get one penny

2  of those funds, then what?

3       MR. KATZ:  Again, Judge, that is a big if.  Let's do

4  it the other way.

5       THE COURT:  Answer my question first.  If they do

6  not take a penny of it, as Mr. Bruno says they don't?

7       MR. KATZ:  Then what they've done is to transfer the

8  cost along with the payment, Judge, and it's not legal.

9  They've made it more expensive to pay.  It's simply not legal.

10      THE COURT:  On what case are you relying on for that

11  proposition?

12      MR. KATZ:  There are cases.  I don't have them in

13  front of me, but there certainly are cases that say you cannot

14  and perhaps more importantly, the statute itself does not

15  allow somebody to add fees.

16      You're not allowed to add to the amount of the

17  collection fee.  So the question becomes, in this case, if you

18  will, whether this third-party charges a fee for making a

19  payment.  That's what they're suggesting.

20      THE COURT:  What about the line of cases that I

21  distinguished in the summary judgment motion on the basis of

22  the defendant debt collector not actually taking a portion of

23  the fee?  Those courts have found that where the debt

24  collector does not take a portion of the fee, that transaction

25  fee does not violate the FDCPA.

1          MR. KATZ:  Judge, I still would say that the

2     decisions are distinguishable.  And I think they're further

3     distinguishable based on the document.

4          THE COURT:  Well, they're distinguishable because on

5     a motion to dismiss, I have to construe your complaint in the

6     light most favorable to you, the plaintiff.  But if the facts

7     turn out that they don't collect, they don't profit by one

8     penny from any portion of this transaction fee, how do you

9     win?

10          MR. KATZ:  I win on the simple notion that this is

11     not a third party service.  So when you see what the web site

12     is and you make payment to the defendant, the fact that

13     there's someone else behind there that's getting paid, and

14     you're paying them, does not make it a third-party.

15          THE COURT:  Okay.  So what you're telling me is that

16     the third-party here is not wholly independent from the

17     collection effort itself.  That the third-party is getting

18     paid a percentage of the collections, plus.  And getting all

19     of this transaction fee.  So they are, in effect, standing in

20     the shoes of the defendant in every respect whatsoever.

21          MR. KATZ:  That is correct, Judge.  The fact is,

22     again, that when you have a contract that says you can pay me

23     this way and you can pay me that way, it seems to indicate

24     that it's the defendant that decides.

25          I don't think anyone would say, for example, Judge,

1  we've had cases like this, well, we put in a new phone system

2  and we lease our phone system so you're not paying us, but

3  each time we call, there's a ten cent charge and we add that

4  to the collection fee.

5          We have operators in India.  They don't belong to

6  our company.  Each time they answer the phone, it's two cents.

7  You have to pay that.

8          So what we're really getting to, Judge, is where

9  someone is suggesting that they can essentially make

10  everything a third party.  There's nothing third-party about

11  this site.  It's not an e-Bay type of payment center.  It's

12  not Western Union.  It's not any of these things.  It's a

13  contract that they made.  They decided not to do their own web

14  in-house payment collection.

15          THE COURT:  I understand that.

16          MR. KATZ:  They hired a third party.

17          THE COURT:  I understand.

18          MR. KATZ:  So now you, debtor, have to pay more.

19          THE COURT:  I understand, Mr. Katz.  I understand.

20          Mr. Bruno, let me just ask you one more time, what

21  is the defense to that?

22          MR. BRUNO:  That is just not --  just disagree with

23  that, Judge.  And that's not a factual issue.  The contract

24  says what the contract says.  To suggest that this separate

25  company somehow stands in our shoes or my client's shoes, the

1   facts don't support that.

2          THE COURT:  Is the set up here different than the

3   set up in those cases that I distinguished in the motion to

4   dismiss?  Isn't the third party here very different than

5   PayPal or Western Union who only provide a mechanism for

6   payment and not a mechanism for a full collection of all of

7   the defendant's debts here.

8          MR. BRUNO:  That is true.  This is a third party

9   vendor that specializes in this.  But for them to suggest that

10  every vendor out there now becomes a de facto debt collector,

11  we suggest that any debt collector would be open for liability

12  if they use this vendor.

13         Getting back to the issue of discovery.  What

14  Mr. Katz is really suggesting, I'm entitled to all this

15  information on what -- whether or not he has collected fees

16  from the class, essentially.  That's discovery for the class.

17  That's not discovery that's necessary for the purposes of this

18  motion.

19         He's looking for information, which the magistrate

20  already said is premature.  Again, we have an issue with

21  whether or not Shami is a proper class representative.

22         THE COURT:  Again, Mr. Katz, tell me what discovery,

23  if any, you need to address the motion that the defendant

24  wishes to make here?

25         MR. KATZ:  Judge, I believe in terms of what I

1  already indicated as well as documents.  I know Mr. Bruno

2  indicated that he sent me e-mails.  I think there was "a"

3  e-mail.  And I find it a little hard to believe -- I've

4  requested all documents, and I guess we'll find out whether or

5  not they're just going to make a statement that there are no

6  other correspondence relating to this contract and that

7  there's nothing else I'm entitled to.

8          So I would need that if it exists.

9          THE COURT:  Just the e-mail?

10          MR. KATZ:  No, Judge.  I would need all

11  correspondence relating between the third party and the

12  defendant vis-a-vis this contract.

13          THE COURT:  All right.

14          MR. KATZ:  It seems a reasonable request, Judge.

15  They're claiming that this is -- and again, Judge, if I were

16  the defendant, I'd show none of the money went here, et

17  cetera, et cetera, I would rush to show it.

18          I haven't seen any of these correspondence.  I

19  haven't seen anything.  And originally, I got half a contract,

20  Judge.

21          THE COURT:  It seems to me that there is still some

22  discovery outstanding here before this motion can go forward.

23          Mr. Bruno, you even concede that there is at least a

24  small portion.

25          Mr. Katz has indicated that he's not intending to

1    take depositions, but that he does want to have more

2    information about the relationship between the parties

3    vis-a-vis the contract.  I guess most specifically the

4    transaction fee that we're talking about.

5            But given that Mr. Katz's theory is not just wholly

6    focused on the transaction fee but also related to everything

7    that the third-party does for the defendant, which is

8    different than the stand alone third-party vendors or

9    providers that are cited in those other cases, that he might

10   be entitled to some of that.

11           Again, I am not ruling on what Mr. Katz should get.

12   I think that is best left to the magistrate judge.  You are

13   going to see him.  Today is the perfect day to talk about

14   this.

15           Where do things stand in terms of class discovery?

16   I know there was a protective order issued.  I saw Judge

17   Pohorelsky's order on net worth.  So where do things stand in

18   that regard?

19           MR. BRUNO:  As far as the discovery, Your Honor?

20           THE COURT:  Yes.  I'm just trying to see if the two

21   motions, if there's going to be a class cert motion and a

22   summary judgment motion all presented at the same time.

23           MR. BRUNO:  I can't speak for Mr. Katz, obviously,

24   on the class cert.  I thought that the discovery thus far

25   which affected the class, which really is limited to kind of

1  net worth information which the magistrate has.  But as far as

2  the class certification, I'll defer to Mr. Katz on that.

3          MR. KATZ:  Well, Judge, the defendant had opposed

4  various discovery on net worth.  Judge Pohorelsky ordered that

5  if they were to waive any objection to class certification

6  based on a lack of net worth, that he would not at this time

7  order any additional discovery than he's already ordered.

8          THE COURT:  He did that, right?

9          MR. KATZ:  Yes.  I would say as to class

10 certification, we're ready to go.

11         THE COURT:  What about the issue of whether or not

12 Mr. Shami is not an appropriate class representative here?

13         MR. KATZ:  Well, Judge, the class case law is pretty

14 clear for what someone has to be to be an appropriate

15 representative.  I would say that at least initially, everyone

16 is presumed to be an appropriate representative.  I haven't

17 heard anything --

18         THE COURT:  But you're not disputing the fact that

19 Mr. Shami never availed himself of the telephone option, was

20 not aggrieved by the charge of $7.50, or whatever the

21 transaction fee was.

22         MR. KATZ:  The question is not whether or not

23 Mr. Shami is aggrieved.  But the question is whether or not

24 the letter itself violates the FDCPA from an objective

25 standard.  So the question becomes does the letter that

1   requests the fee that is illegal violates the FDCPA.

2          THE COURT:  We're not talking about whether

3   something violates the FDCPA.  We're talking about the

4   requirements for whether or not someone is an appropriate

5   class representative.

6          MR. KATZ:  I thought Your Honor was asking about the

7   standing of Mr. Shami.

8          THE COURT:  In part, yes.

9          MR. KATZ:  Well, the answer is, based upon the type

10  of statute that it is, you have standing by receiving a letter

11  that on an objective standard violates the FDCPA.

12         THE COURT:  Why is it that his claim is

13  representative of all the claims here?

14         MR. KATZ:  Well, his claim would be that he received

15  the violative letter.  So on that basis, anyone whose received

16  this violative letter is part of the same class and he would

17  be an appropriate representative.

18         THE COURT:  Even though his damages may be different

19  than everybody else's?

20         MR. KATZ:  That is correct, Judge.  And as to that

21  question, the law is also clear.  That while the

22  representative may not have the same damages, they have the

23  same liability.  He is an appropriate representative.  In this

24  case, the damages are easily accessible.

25         THE COURT:  We have statutory damages here?

1      MR. KATZ:  Statutory and actual, Judge.  So in this

2  case, Mr. Shami is certainly able to represent the statutory

3  class.  Which obviously, I take it, that there is.  But he's

4  also capable of representing those who have actual damage.  In

5  this case, the actual damage will be the amount that was paid

6  since it was not legal.

7      THE COURT:  So your only theory of actual damages is

8  the amount of the transaction?

9      MR. KATZ:  Correct, Judge.  There isn't emotional

10  damages here.  There isn't some sort of contractual thing that

11  created other damages.  It seems very straightforward.

12  Everyone who had a letter that said they were going to be

13  charged what Plaintiff will characterize as a neat little fee

14  is part of an FDCPA class.

15      Those people who actually paid it would have an

16  additional damage, an actual damage since they paid amounts

17  that should not have been paid and were not legal to collect.

18      THE COURT:  Well, I think we ought to do this, since

19  you're going to the magistrate judge, there are still things

20  that need to be resolved vis-a-vis discovery on the underlying

21  claim, not even talking about the class certification, how

22  that goes, whether it's ripe at the same time as to summary

23  judgment motion, let's see where that takes us.  But at least

24  the motion that the defendant wants to make now, I think we

25  ought to pause and resolve these outstanding discovery issues

1   and see how quickly that can get done.

2        When -- well, I think the best thing to do at this

3   stage is to ask for a joint status report sometime in the next

4   couple of weeks in which you can tell me where things stand in

5   discovery, what the magistrate judge ordered, what you've

6   agreed to provide, when you've agreed to provide it and when

7   you think a motion might be ripe.

8        We don't have to get back together again.  I can

9   then just set a briefing schedule when the time is right.  It

10  doesn't sound like it should take too long, is that right?

11        MR. KATZ:  I agree with that, Your Honor.

12        MR. BRUNO:  I agree, Your Honor.

13        THE COURT:  So is two weeks too soon?

14        MR. KATZ:  Judge, based on the upcoming holiday, I

15  would ask for three, Judge.

16        THE COURT:  That's fine.  Let me set a status -- a

17  date for a status report.  Three weeks takes us to the first

18  week in May.

19        How about May 2nd?  That is three weeks from today,

20  is that right?  Yes, three weeks from today.  We'll make it

21  May 2nd, just for a letter.

22        MR. BRUNO:  Judge, okay.  I'm going to be out from

23  the office the 27th and 28th and 29th.  But I'll call you on

24  this.

25        THE COURT:  I'm sure you can resolve this well in

1  advance.  If you need more time, just let me know.  So I will

2  expect a joint status report on May 2nd.

3          Anything else?

4          MR. BRUNO:  No, Your Honor.

5          MR. KATZ:  No, Your Honor.

6          Thank you, Judge.

7          MR. BRUNO:  Thank you, Your Honor.

8          (Matter concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SHAMI v. NATIONAL ENTERPRISE SYSTEMS, INC.                    1

**$**

**$7.50** [1] - 21:20

**0**

**09-CV-0722** [1] - 1:4
**09-CV-722** [1] - 2:3

**1**

**10271** [1] - 1:20
**11** [1] - 1:8
**11201** [1] - 1:24
**11516** [1] - 1:16
**120** [1] - 1:19
**12:00** [1] - 1:9

**2**

**201** [1] - 1:15
**2011** [1] - 1:8
**225** [1] - 1:23
**27th** [1] - 24:23
**28th** [1] - 24:23
**29th** [1] - 24:23
**2nd** [3] - 24:19, 24:21, 25:2

**4**

**445** [1] - 1:15

**5**

**5** [1] - 8:24

**7**

**718-613-2647** [1] - 1:24

**A**

**able** [7] - 3:5, 7:5, 12:18, 13:12, 14:8, 14:12, 23:2
**absolutely** [1] - 8:6
**accessible** [1] - 22:24
**accounting** [1] - 14:20
**actual** [6] - 7:19, 23:1, 23:4, 23:5, 23:7, 23:16
**add** [3] - 15:15, 15:16, 17:3
**addendum** [1] - 7:3
**additional** [4] - 3:14, 4:10, 21:7, 23:16
**address** [2] - 10:3, 18:23
**advance** [1] - 25:1

**affected** [1] - 20:25
**affidavit** [1] - 14:9
**affidavits** [4] - 7:12, 13:24, 14:5
**afternoon** [5] - 2:1, 2:7, 2:8, 2:9, 2:11
**aggrieved** [2] - 21:20, 21:23
**agree** [2] - 24:11, 24:12
**agreed** [3] - 7:22, 24:6
**agreement** [2] - 7:3
**allow** [1] - 15:15
**allowable** [1] - 5:8
**allowed** [2] - 13:20, 15:16
**alone** [1] - 20:8
**ambiguous** [1] - 11:6
**amend** [1] - 3:17
**America** [3] - 5:6, 5:7, 5:15
**amount** [5] - 7:7, 8:18, 15:16, 23:5, 23:8
**amounts** [4] - 4:19, 4:20, 23:16
**ancillary** [1] - 8:9
**answer** [3] - 3:7, 7:10, 15:5, 17:6, 22:9
**appear** [3] - 3:25, 4:3, 6:25
**appearances** [1] - 2:4
**APPEARANCES** [1] - 1:13
**appeared** [2] - 6:24, 11:12
**appropriate** [8] - 6:3, 6:5, 21:12, 21:14, 21:16, 22:4, 22:17, 22:23
**April** [1] - 1:8
**argue** [1] - 13:2
**argument** [4] - 10:15, 10:19, 13:20, 14:1
**arguments** [1] - 10:15
**ascertain** [1] - 14:14
**aside** [1] - 6:9
**assuming** [1] - 10:20
**availed** [1] - 21:19
**Avenue** [1] - 1:15

**B**

**backwards** [1] - 4:2
**Bank** [3] - 5:6, 5:7, 5:14
**base** [3] - 4:18, 9:6, 9:7
**based** [8] - 3:20, 6:16, 7:6, 14:7, 16:3, 21:6, 22:9, 24:14
**basis** [2] - 15:21, 22:15
**Bay** [1] - 17:11
**becomes** [4] - 4:17, 15:17, 18:10, 21:25
**BEFORE** [1] - 1:10
**behalf** [1] - 4:23
**behind** [1] - 16:13
**belong** [1] - 17:5
**best** [2] - 20:12, 24:2
**better** [1] - 3:8
**between** [5] - 8:17, 9:13, 13:5, 19:11, 20:2
**bifurcation** [1] - 13:4
**big** [1] - 15:3
**bit** [2] - 4:2, 11:21

**BORGEEST** [1] - 1:19
**bottom** [1] - 13:12
**briefing** [1] - 24:9
**broad** [1] - 11:7
**Broadway** [1] - 1:19
**Brooklyn** [2] - 1:6, 1:24
**Bruno** [9] - 2:10, 6:18, 9:10, 11:4, 14:4, 15:6, 17:20, 19:1, 19:23
**BRUNO** [19] - 1:20, 2:9, 6:20, 6:24, 7:16, 8:6, 11:8, 12:1, 12:4, 12:7, 12:14, 17:22, 18:8, 20:19, 20:23, 24:12, 24:22, 25:4, 25:7
**buyers** [1] - 4:23
**BY** [1] - 1:20

**C**

**Cadman** [1] - 1:23
**cannot** [2] - 9:2, 15:13
**capable** [1] - 23:4
**carries** [1] - 3:23
**case** [12] - 5:10, 5:13, 7:9, 7:25, 10:21, 14:7, 15:10, 15:17, 21:13, 22:24, 23:2, 23:5
**cases** [6] - 15:12, 15:13, 15:20, 17:1, 18:3, 20:9
**Cedarhurst** [1] - 1:16
**cent** [1] - 17:3
**center** [1] - 17:11
**Central** [1] - 1:15
**cents** [1] - 17:6
**cert** [2] - 20:21, 20:24
**certain** [2] - 3:3, 11:23
**certainly** [4] - 10:15, 11:17, 15:13, 23:2
**certification** [7] - 6:2, 6:9, 8:4, 21:2, 21:7, 21:10, 23:21
**cetera** [2] - 19:17
**characterize** [1] - 23:13
**charge** [10] - 5:15, 7:17, 7:22, 9:8, 9:9, 10:13, 14:23, 14:24, 17:3, 21:20
**charged** [8] - 7:9, 7:18, 8:1, 8:17, 9:18, 9:22, 23:13
**charges** [7] - 3:4, 3:22, 7:4, 7:5, 8:23, 10:18, 15:18
**cited** [1] - 20:9
**Civil** [1] - 2:2
**claim** [3] - 22:12, 22:14, 23:21
**claiming** [2] - 10:5, 19:15
**claims** [2] - 11:6, 22:13
**class** [21] - 6:1, 6:9, 8:3, 8:4, 18:16, 18:21, 20:15, 20:21, 20:24, 20:25, 21:2, 21:5, 21:9, 21:12, 21:13, 22:5, 22:16, 23:3, 23:14, 23:21
**clear** [5] - 8:21, 9:5, 11:19, 21:14, 22:21
**clearly** [2] - 10:12, 13:23
**CLERK** [1] - 2:2
**client** [9] - 5:15, 7:10, 7:17, 7:18, 7:21,

SHAMI v. NATIONAL ENTERPRISE SYSTEMS, INC. _____ 2

11:13, 12:5, 12:15, 12:19
  **client's** [4] - 7:11, 11:16, 12:17, 17:25
  **collect** [4] - 7:6, 7:7, 16:7, 23:17
  **collected** [5] - 4:20, 8:18, 10:7, 18:15
  **collecting** [2] - 4:23, 7:6
  **collection** [6] - 4:13, 15:17, 16:17, 17:4, 17:14, 18:6
  **collections** [2] - 4:16, 16:18
  **collector** [4] - 15:22, 15:24, 18:10, 18:11
  **collects** [2] - 4:10, 14:2
  **coming** [1] - 9:25
  **company** [4] - 8:23, 8:24, 17:6, 17:25
  **complaint** [1] - 16:5
  **concede** [1] - 19:23
  **concerned** [1] - 3:9
  **concerns** [1] - 2:21
  **concluded** [1] - 25:8
  **conference** [6] - 2:2, 2:12, 2:17, 2:25, 5:3, 5:22
  **confirming** [1] - 12:17
  **construe** [1] - 16:5
  **consumer** [8] - 9:4, 9:9, 9:18, 10:18, 13:1, 14:13
  **consumers** [2] - 14:23, 14:24
  **contest** [1] - 12:18
  **contract** [31] - 2:22, 2:23, 3:11, 3:14, 3:16, 3:17, 3:19, 4:5, 4:18, 5:6, 5:7, 5:8, 5:14, 5:18, 7:11, 7:20, 7:21, 9:13, 11:11, 11:24, 12:3, 13:13, 14:9, 16:22, 17:13, 17:23, 17:24, 19:6, 19:12, 19:19, 20:3
  **contracted** [1] - 8:25
  **contracts** [3] - 11:7, 13:25, 14:8
  **contractual** [1] - 23:10
  **contradict** [2] - 13:25, 14:8
  **control** [2] - 4:4, 10:13
  **controlled** [1] - 7:21
  **correct** [5] - 7:2, 11:3, 16:21, 22:20, 23:9
  **correspondence** [6] - 3:17, 11:9, 11:17, 19:6, 19:11, 19:18
  **cost** [2] - 10:17, 15:8
  **counsel** [1] - 2:4
  **couple** [1] - 24:4
  **COURT** [58] - 1:1, 2:1, 2:8, 2:11, 3:12, 3:24, 4:13, 5:12, 5:24, 6:6, 6:18, 6:21, 7:14, 8:3, 8:16, 9:6, 9:10, 9:25, 10:22, 11:4, 11:23, 12:2, 12:6, 12:11, 12:20, 13:11, 13:18, 14:4, 14:14, 14:18, 15:1, 15:5, 15:10, 15:20, 16:4, 16:15, 17:15, 17:17, 17:19, 18:2, 18:22, 19:9, 19:13, 19:21, 20:20, 21:8, 21:11, 21:18, 22:2, 22:8, 22:12, 22:18, 22:25, 23:7, 23:18, 24:13, 24:16, 24:25
  **Court** [1] - 1:23
  **Courthouse** [1] - 1:5
  **courts** [1] - 15:23
  **created** [1] - 23:11
  **credit** [1] - 5:7

  **creditors** [2] - 4:16, 4:22
  **CRR** [1] - 1:23
  **cut** [3] - 8:17, 11:19, 11:24

## D

  **damage** [4] - 23:4, 23:5, 23:16
  **damages** [7] - 22:18, 22:22, 22:24, 22:25, 23:7, 23:10, 23:11
  **date** [2] - 11:20, 24:17
  **de** [1] - 18:10
  **debt** [7] - 4:13, 4:22, 8:18, 15:22, 15:23, 18:10, 18:11
  **debtor** [5] - 4:16, 7:6, 7:18, 7:23, 17:18
  **debts** [1] - 18:7
  **deceptive** [1] - 10:24
  **decided** [1] - 17:13
  **decides** [1] - 16:24
  **decision** [2] - 5:1, 5:5
  **decisions** [1] - 16:2
  **Defendant** [5] - 1:8, 1:19, 8:22, 9:8, 10:12
  **defendant** [28] - 2:10, 2:12, 2:14, 3:21, 4:1, 4:4, 4:8, 4:23, 5:3, 8:25, 9:5, 9:13, 10:7, 10:8, 10:16, 12:25, 15:1, 15:22, 16:12, 16:20, 16:24, 18:23, 19:12, 19:16, 20:7, 21:3, 23:24
  **defendant's** [1] - 18:7
  **defense** [3] - 5:19, 5:20, 17:21
  **defer** [1] - 21:2
  **demonstrate** [2] - 3:18, 14:7
  **depose** [2] - 12:15
  **deposed** [2] - 12:5, 12:7
  **deposition** [1] - 12:8
  **depositions** [5] - 13:14, 13:15, 14:18, 14:19, 20:1
  **difference** [1] - 8:17
  **different** [9] - 4:19, 4:20, 4:24, 18:2, 18:4, 20:8, 22:18
  **directly** [2] - 7:23, 9:23
  **disagree** [2] - 11:20, 17:22
  **disclose** [2] - 3:4, 9:16
  **discovery** [25] - 2:17, 2:21, 6:10, 8:8, 8:9, 8:13, 10:1, 10:2, 11:1, 11:21, 12:18, 18:13, 18:16, 18:17, 18:22, 19:22, 20:15, 20:19, 20:24, 21:7, 23:20, 23:25, 24:5
  **discussed** [1] - 8:7
  **dismiss** [3] - 2:14, 16:5, 18:4
  **dispositive** [1] - 12:10
  **dispute** [1] - 12:2
  **disputing** [1] - 21:18
  **distinguishable** [3] - 16:2, 16:3, 16:4
  **distinguished** [2] - 15:21, 18:3
  **district** [1] - 13:5
  **DISTRICT** [2] - 1:1, 1:1
  **District** [1] - 1:11
  **Docket** [1] - 2:2
  **document** [8] - 6:16, 8:21, 9:11, 9:19,

9:20, 9:21, 13:23, 16:3
  **documentary** [1] - 14:23
  **documents** [14] - 3:14, 3:24, 8:13, 9:2, 9:7, 9:16, 10:10, 10:11, 10:12, 11:14, 12:21, 13:23, 19:1, 19:4
  **dollar** [3] - 9:22, 10:19
  **done** [4] - 8:25, 9:17, 15:7, 24:1

## E

  **e-Bay** [1] - 17:11
  **e-mail** [2] - 19:3, 19:9
  **e-mails** [2] - 11:10, 19:2
  **easily** [1] - 22:24
  **East** [1] - 1:23
  **EASTERN** [1] - 1:1
  **effect** [1] - 16:19
  **effort** [1] - 16:17
  **either** [4] - 3:17, 6:3, 7:19, 10:20
  **emotional** [1] - 23:9
  **emphasize** [1] - 6:15
  **ENTERPRISE** [1] - 1:6
  **Enterprise** [1] - 2:3
  **entire** [1] - 7:2
  **entitled** [7] - 3:16, 6:23, 14:22, 14:24, 18:14, 19:7, 20:10
  **essentially** [5] - 4:11, 4:12, 9:8, 17:9, 18:16
  **establish** [1] - 11:1
  **et** [2] - 19:16, 19:17
  **exactly** [3] - 9:3, 14:12, 14:14
  **example** [3] - 2:22, 9:17, 16:25
  **excuse** [1] - 12:14
  **exists** [2] - 11:17, 19:8
  **expect** [1] - 25:2
  **expensive** [1] - 15:9
  **extent** [1] - 5:10

## F

  **face** [1] - 13:17
  **fact** [9] - 3:10, 5:7, 7:13, 8:22, 10:12, 14:7, 16:12, 16:21, 21:18
  **facto** [1] - 18:10
  **facts** [6] - 10:25, 11:2, 12:22, 13:3, 16:6, 18:1
  **factual** [1] - 17:23
  **far** [5] - 7:4, 8:12, 20:19, 20:24, 21:1
  **favorable** [1] - 16:6
  **FDCPA** [9] - 13:1, 13:16, 13:17, 15:25, 21:24, 22:1, 22:3, 22:11, 23:14
  **February** [1] - 2:19
  **fee** [33] - 4:1, 4:4, 4:10, 4:17, 4:18, 6:10, 7:8, 7:9, 7:17, 7:19, 7:23, 8:19, 10:9, 10:10, 11:25, 12:25, 13:12, 13:19, 13:21, 14:21, 15:17, 15:18, 15:23, 15:24, 15:25, 16:8, 16:19, 17:4, 20:4, 20:6, 21:21, 22:1, 23:13

**fees** [6] - 2:23, 5:8, 5:15, 9:4, 15:15, 18:15
**figure** [1] - 12:22
**fine** [1] - 24:16
**first** [4] - 2:16, 8:20, 15:5, 24:17
**fluctuation** [1] - 9:12
**focus** [1] - 10:1
**focused** [1] - 20:6
**forward** [2] - 3:5, 19:22
**Frankly** [1] - 5:22
**frankly** [1] - 6:17
**front** [1] - 15:13
**full** [3] - 2:22, 3:14, 18:6
**funds** [1] - 15:2

## G

**gee** [1] - 5:19
**given** [5] - 3:10, 3:13, 3:15, 6:7, 20:5
**guess** [2] - 19:4, 20:3

## H

**half** [1] - 19:19
**hard** [1] - 19:3
**hazards** [1] - 13:4
**head** [1] - 9:10
**hear** [1] - 12:24
**heard** [2] - 14:4, 21:17
**himself** [1] - 21:19
**hired** [2] - 8:24, 17:16
**hires** [1] - 10:16
**holiday** [1] - 24:14
**hone** [1] - 12:21
**Honor** [16] - 2:7, 2:9, 3:1, 5:2, 5:5, 6:20, 8:6, 11:18, 13:19, 20:19, 22:6, 24:11, 24:12, 25:4, 25:5, 25:7
**HONORABLE** [1] - 1:11
**house** [1] - 17:14

## I

**illegal** [1] - 22:1
**imagine** [1] - 3:1
**immaterial** [1] - 8:14
**importantly** [1] - 15:14
**imposed** [1] - 9:4
**imposes** [1] - 10:9
**in-house** [1] - 17:14
**INC** [1] - 1:7
**Inc.** [1] - 2:3
**incidental** [1] - 10:23
**inclined** [3] - 3:22, 11:18, 11:19
**incorrect** [1] - 7:4
**independent** [1] - 16:16
**India** [1] - 17:5
**indicate** [1] - 16:23

**indicated** [3] - 19:1, 19:2, 19:25
**indicates** [2] - 7:11, 9:12
**inflating** [1] - 7:15
**information** [17] - 3:3, 3:6, 6:8, 8:11, 12:9, 12:13, 13:8, 13:10, 14:11, 14:17, 14:22, 14:25, 18:15, 18:19, 20:2, 21:1
**instance** [1] - 8:21
**insufficient** [1] - 12:8
**intend** [3] - 6:1, 13:14, 14:14
**intending** [1] - 19:25
**intends** [1] - 13:2
**interrupting** [1] - 12:14
**investigating** [1] - 11:16
**issue** [12] - 5:11, 5:16, 5:23, 6:10, 7:9, 8:3, 12:10, 17:23, 18:13, 18:20, 21:11
**issued** [1] - 20:16
**issues** [6] - 3:2, 3:9, 5:22, 6:15, 8:9, 23:25
**itself** [5] - 3:17, 11:24, 15:14, 16:17, 21:24

## J

**January** [1] - 2:18
**John** [1] - 2:10
**joint** [2] - 24:3, 25:2
**JONATHAN** [1] - 1:20
**judge** [12] - 2:25, 3:2, 13:5, 16:1, 18:25, 20:12, 21:4, 23:19, 24:5, 24:14, 24:22
**Judge** [48] - 1:11, 3:1, 3:8, 3:20, 4:3, 4:25, 5:1, 5:23, 6:1, 6:14, 6:15, 8:15, 8:20, 9:2, 9:15, 9:17, 9:20, 9:21, 9:23, 10:4, 10:10, 10:14, 11:3, 12:14, 13:9, 13:15, 14:6, 14:10, 14:16, 14:19, 15:3, 15:8, 16:21, 16:25, 17:8, 17:23, 19:10, 19:14, 19:15, 19:20, 20:16, 21:3, 21:13, 22:20, 23:1, 23:9, 24:15, 25:6
**judgment** [9] - 2:15, 5:25, 6:2, 6:3, 6:4, 6:23, 15:21, 20:22, 23:23
**juncture** [1] - 6:5

## K

**Katz** [20] - 2:6, 2:20, 6:11, 7:2, 7:14, 8:16, 11:5, 12:5, 12:12, 12:24, 13:8, 13:14, 17:19, 18:14, 18:22, 19:25, 20:11, 20:23, 21:2
**KATZ** [44] - 1:14, 2:6, 2:25, 3:13, 4:3, 4:15, 5:14, 6:1, 6:13, 8:20, 9:7, 9:11, 10:4, 11:3, 13:9, 13:15, 13:19, 14:6, 14:16, 14:19, 15:3, 15:7, 15:12, 16:1, 16:10, 16:21, 17:16, 17:18, 18:25, 19:10, 19:14, 21:3, 21:9, 21:13, 21:22, 22:6, 22:9, 22:14, 22:20, 23:1, 23:9, 24:11, 24:14, 25:5
**Katz's** [1] - 20:5
**KAUFMAN** [1] - 1:19
**kind** [1] - 20:25

## L

**lack** [1] - 21:6
**language** [4] - 7:20, 7:21, 11:14, 11:25
**last** [3] - 5:3, 5:21, 11:12
**law** [4] - 6:22, 10:23, 21:13, 22:21
**LAWRENCE** [1] - 1:14
**Lawrence** [1] - 2:6
**lease** [1] - 17:2
**least** [3] - 19:23, 21:15, 23:23
**left** [2] - 11:22, 20:12
**legal** [5] - 10:19, 15:8, 15:9, 23:6, 23:17
**letter** [12] - 2:20, 3:10, 11:15, 13:17, 21:24, 21:25, 22:15, 22:16, 23:12, 24:21
**liability** [1] - 18:11, 22:23
**light** [2] - 11:6, 16:6
**limited** [1] - 20:25
**line** [1] - 15:20
**LLP** [1] - 1:19
**look** [1] - 4:18
**looking** [1] - 18:19

## M

**magistrate** [10] - 6:25, 8:7, 8:10, 11:12, 13:5, 18:19, 20:12, 21:1, 23:19, 24:5
**Magistrate** [1] - 7:1
**mail** [2] - 19:3, 19:9
**mails** [2] - 11:10, 19:2
**Matter** [1] - 25:8
**matter** [1] - 6:22
**MAUSKOPF** [1] - 1:11
**mean** [2] - 10:23, 10:24
**mechanism** [2] - 18:5, 18:6
**meeting** [1] - 3:7
**might** [4] - 8:14, 10:24, 20:9, 24:7
**mistaken** [1] - 11:10
**moment** [1] - 10:20
**money** [3] - 4:11, 8:18, 19:16
**most** [2] - 16:6, 20:3
**mostly** [1] - 3:2
**motion** [30] - 2:12, 2:13, 2:17, 2:22, 5:3, 5:17, 5:21, 6:7, 6:12, 6:21, 8:7, 8:14, 8:15, 10:3, 11:2, 11:18, 12:10, 12:23, 15:21, 16:5, 18:3, 18:18, 18:23, 19:22, 20:21, 20:22, 23:23, 23:24, 24:7
**motions** [2] - 2:13, 20:21
**move** [5] - 2:14, 5:24, 6:1, 6:2, 6:3
**MR** [61] - 2:6, 2:9, 2:25, 3:13, 4:3, 4:15, 5:14, 6:1, 6:13, 6:20, 6:24, 7:16, 8:6, 8:20, 9:7, 9:11, 10:4, 11:3, 11:8, 12:1, 12:4, 12:7, 12:14, 13:9, 13:15, 13:19, 14:6, 14:16, 14:19, 15:3, 15:7, 15:12, 16:1, 16:10, 16:21, 17:16, 17:18, 17:22, 18:8, 18:25, 19:10, 19:14, 20:19, 20:23,

21:3, 21:9, 21:13, 21:22, 22:6, 22:9, 22:14, 22:20, 23:1, 23:9, 24:11, 24:12, 24:14, 24:22, 25:4, 25:5, 25:7

## N

**N.Y** [1] - 1:6
**narrow** [1] - 8:19
**National** [1] - 2:3
**NATIONAL** [1] - 1:6
**neat** [1] - 23:13
**necessary** [4] - 3:4, 12:23, 13:16, 18:17
**need** [9] - 2:22, 10:2, 10:4, 10:5, 18:23, 19:8, 19:10, 23:20, 25:1
**needed** [2] - 5:4, 5:17
**net** [4] - 20:17, 21:1, 21:4, 21:6
**never** [4] - 8:1, 21:19
**new** [1] - 17:1
**NEW** [1] - 1:1
**New** [4] - 1:16, 1:20, 1:24
**next** [1] - 24:3
**none** [1] - 19:16
**note** [1] - 2:4
**nothing** [4] - 5:4, 8:21, 17:10, 19:7
**notice** [1] - 12:8
**notion** [1] - 16:10

## O

**objection** [1] - 21:5
**objective** [2] - 21:24, 22:11
**obligations** [1] - 3:19
**obviously** [5] - 4:6, 6:5, 12:5, 20:23, 23:3
**OF** [1] - 1:1
**office** [1] - 24:23
**one** [7] - 2:13, 10:17, 12:20, 13:4, 15:1, 16:7, 17:20
**online** [2] - 7:19, 14:21
**open** [1] - 18:11
**operators** [1] - 17:5
**opposed** [1] - 21:3
**option** [1] - 21:19
**order** [6] - 8:10, 10:2, 20:16, 20:17, 21:7
**ordered** [5] - 11:13, 21:4, 21:7, 24:5
**originally** [1] - 19:19
**ought** [2] - 23:18, 23:25
**outstanding** [5] - 8:13, 11:22, 13:7, 19:22, 23:25
**overall** [1] - 7:16
**own** [2] - 14:8, 17:13

## P

**p.m** [1] - 1:9

**paid** [7] - 8:2, 16:13, 16:18, 23:5, 23:15, 23:16, 23:17
**part** [6] - 3:11, 9:15, 12:4, 22:8, 22:16, 23:14
**parties** [2] - 3:18, 20:2
**party** [34] - 3:22, 4:5, 4:6, 4:7, 4:9, 4:10, 5:18, 7:5, 7:17, 7:22, 9:14, 9:23, 10:8, 10:9, 10:16, 10:17, 10:18, 12:7, 14:2, 15:18, 16:11, 16:14, 16:16, 16:17, 17:10, 17:16, 18:4, 18:8, 19:11, 20:7, 20:8
**pass** [1] - 10:17
**pause** [1] - 23:25
**pay** [6] - 7:19, 15:9, 16:22, 16:23, 17:7, 17:18
**paying** [3] - 14:21, 16:14, 17:2
**payment** [8] - 8:24, 14:21, 15:8, 15:19, 16:12, 17:11, 17:14, 18:6
**payments** [3] - 10:6, 14:11, 14:15
**PayPal** [1] - 18:5
**penny** [3] - 15:1, 15:6, 16:8
**people** [1] - 23:15
**percentage** [1] - 16:18
**perfect** [1] - 20:13
**perhaps** [2] - 12:22, 15:14
**phone** [4] - 7:19, 17:1, 17:2, 17:6
**picture** [1] - 3:8
**piece** [2] - 4:1, 12:25
**plaintiff** [2] - 2:6, 2:18, 7:25, 8:1, 8:4, 16:6
**Plaintiff** [4] - 1:4, 1:14, 8:12, 23:13
**Plaza** [1] - 1:23
**pleadings** [1] - 6:4
**plus** [1] - 16:18
**Pohorelsky** [5] - 3:1, 3:3, 3:8, 6:14, 21:4
**Pohorelsky's** [1] - 20:17
**point** [2] - 3:21, 6:8
**portion** [4] - 15:22, 15:24, 16:8, 19:24
**position** [1] - 12:17
**practice** [1] - 12:23
**practices** [3] - 4:14, 4:16, 13:13
**pre** [5] - 2:12, 2:17, 5:3, 5:17, 5:21
**pre-motion** [5] - 2:12, 2:17, 5:3, 5:17, 5:21
**premature** [7] - 6:12, 6:13, 6:21, 11:2, 11:19, 11:20, 18:20
**prepared** [1] - 7:11
**presented** [1] - 20:22
**presumed** [1] - 21:16
**pretty** [1] - 21:13
**primarily** [1] - 3:9
**problem** [1] - 9:15
**process** [2] - 11:16, 12:21
**produce** [3] - 8:12, 11:13, 11:17
**produced** [4] - 5:9, 7:2, 11:9, 11:15
**producing** [1] - 8:11
**profit** [1] - 16:7
**proper** [1] - 18:21

**proposition** [1] - 15:11
**protective** [2] - 8:10, 20:16
**provide** [4] - 7:12, 18:5, 24:6
**provided** [1] - 7:17
**provider** [1] - 4:12
**providers** [1] - 20:9
**purposes** [1] - 18:17
**pursuant** [1] - 8:11
**put** [4] - 6:9, 13:24, 14:4, 17:1
**putting** [1] - 14:9

## Q

**quick** [1] - 3:7
**quickly** [2] - 13:12, 24:1
**quote** [1] - 11:25

## R

**raised** [1] - 5:20
**raises** [1] - 8:3
**rates** [1] - 4:24
**reading** [2] - 3:24, 9:2
**ready** [1] - 21:10
**realized** [1] - 12:9
**really** [3] - 17:8, 18:14, 20:25
**reason** [1] - 4:24
**reasonable** [1] - 19:14
**reasons** [1] - 12:20
**received** [2] - 22:14, 22:15
**receiving** [1] - 22:10
**record** [1] - 2:5
**referring** [2] - 7:4, 11:9
**regard** [1] - 20:18
**regarding** [3] - 2:23, 3:3, 14:11
**related** [4] - 11:10, 11:14, 20:6
**relating** [2] - 19:6, 19:11
**relationship** [1] - 20:2
**relying** [1] - 15:10
**report** [3] - 24:3, 24:17, 25:2
**Reporter** [1] - 1:23
**represent** [1] - 23:2
**representative** [10] - 8:5, 18:21, 21:12, 21:15, 21:16, 22:5, 22:13, 22:17, 22:22, 22:23
**representing** [1] - 23:4
**request** [4] - 2:17, 8:12, 11:19, 19:14
**requested** [5] - 2:12, 12:12, 13:8, 13:9, 19:4
**requests** [2] - 13:6, 22:1
**required** [1] - 11:1
**requirements** [1] - 22:4
**resolve** [2] - 23:25, 24:25
**resolved** [2] - 3:2, 23:20
**respect** [1] - 16:20
**response** [1] - 2:18
**responsibility** [1] - 13:5
**ripe** [5] - 6:7, 8:7, 8:15, 23:22, 24:7

**RMM** [1] - 1:4
**RMR** [1] - 1:23
**RONALD** [1] - 1:23
**ROSLYNN** [1] - 1:11
**round** [1] - 2:13
**RPR** [1] - 1:23
**rule** [1] - 11:18
**ruling** [1] - 20:11
**run** [2] - 9:20, 9:21
**runs** [1] - 4:12
**rush** [1] - 19:17
**RYAN** [1] - 1:19

**S**

**saw** [1] - 20:16
**schedule** [1] - 24:9
**see** [8] - 5:7, 10:10, 10:11, 16:11, 20:13, 20:20, 23:23, 24:1
**seem** [2] - 4:23, 9:12
**sense** [1] - 4:6
**sent** [2] - 12:8, 19:2
**separate** [1] - 17:24
**service** [5] - 7:4, 7:5, 7:16, 16:11
**services** [1] - 7:6
**set** [5] - 10:18, 18:2, 18:3, 24:9, 24:16
**shaking** [1] - 9:10
**SHAMI** [1] - 1:3
**Shami** [7] - 2:3, 18:21, 21:12, 21:19, 21:23, 22:7, 23:2
**shed** [1] - 11:6
**shoes** [3] - 16:20, 17:25
**show** [7] - 9:21, 10:5, 13:22, 13:24, 14:12, 19:16, 19:17
**signed** [1] - 8:10
**simple** [1] - 16:10
**simply** [3] - 4:7, 13:20, 15:9
**site** [3] - 4:12, 16:11, 17:11
**small** [1] - 19:24
**SOLOMON** [1] - 1:3
**someone** [4] - 16:13, 17:9, 21:14, 22:4
**sometime** [1] - 24:3
**somewhat** [2] - 6:13, 11:6
**soon** [1] - 24:13
**sort** [1] - 23:10
**sound** [1] - 24:10
**speaking** [1] - 3:8
**specializes** [1] - 18:9
**specific** [1] - 11:14
**specifically** [2] - 11:8, 20:3
**spell** [1] - 10:12
**stage** [3] - 6:6, 6:22, 24:3
**stand** [7] - 2:16, 2:24, 4:1, 20:8, 20:15, 20:17, 24:4
**standard** [3] - 3:15, 21:25, 22:11
**standing** [3] - 16:19, 22:7, 22:10
**stands** [1] - 17:25
**statement** [2] - 5:16, 19:5

**statements** [1] - 5:2
**STATES** [1] - 1:1
**States** [1] - 1:11
**status** [4] - 24:3, 24:16, 24:17, 25:2
**statute** [2] - 15:14, 22:10
**statutory** [3] - 22:25, 23:1, 23:2
**still** [4] - 11:1, 16:1, 19:21, 23:19
**stood** [1] - 10:6
**straightforward** [1] - 23:11
**suggest** [3] - 17:24, 18:9, 18:11
**suggesting** [6] - 5:24, 7:14, 10:4, 15:19, 17:9, 18:14
**Suite** [1] - 1:15
**summary** [8] - 2:14, 5:25, 6:2, 6:4, 6:23, 15:21, 20:22, 23:22
**support** [2] - 12:9, 18:1
**suppose** [1] - 12:15
**supposed** [1] - 6:25
**system** [2] - 17:1, 17:2
**Systems** [1] - 2:3
**SYSTEMS** [1] - 1:7

**T**

**talks** [3] - 4:18, 4:19, 4:20
**telephone** [1] - 21:19
**ten** [1] - 17:3
**terms** [6] - 2:16, 3:19, 5:1, 14:12, 18:25, 20:15
**THE** [57] - 2:1, 2:2, 2:8, 2:11, 3:12, 3:24, 4:13, 5:12, 5:24, 6:6, 6:18, 7:14, 8:3, 8:16, 9:6, 9:10, 9:25, 10:22, 11:4, 11:23, 12:2, 12:6, 12:11, 12:20, 13:11, 13:18, 14:4, 14:14, 14:18, 15:1, 15:5, 15:10, 15:20, 16:4, 16:15, 17:15, 17:17, 17:19, 18:2, 18:22, 19:9, 19:13, 19:21, 20:20, 21:8, 21:11, 21:18, 22:2, 22:8, 22:12, 22:18, 22:25, 23:7, 23:18, 24:13, 24:16, 24:25
**theory** [3] - 13:1, 20:5, 23:7
**they've** [4] - 9:17, 10:6, 15:7, 15:9
**third** [33] - 3:21, 4:5, 4:6, 4:7, 4:9, 4:10, 5:18, 7:5, 7:17, 7:22, 9:14, 9:23, 10:8, 10:9, 10:16, 10:17, 10:18, 12:7, 14:2, 15:18, 16:11, 16:14, 16:16, 16:17, 17:10, 17:16, 18:4, 18:8, 19:11, 20:7, 20:8
**third-party** [14] - 4:5, 4:6, 4:9, 5:18, 7:17, 7:22, 9:14, 15:18, 16:14, 16:16, 16:17, 17:10, 20:7, 20:8
**three** [4] - 24:15, 24:17, 24:19, 24:20
**today** [5] - 3:8, 6:25, 20:13, 24:19, 24:20
**today's** [1] - 2:25
**together** [1] - 24:8
**TOLKIN** [1] - 1:23
**total** [2] - 4:4, 10:13
**transaction** [11] - 8:19, 11:24, 12:25, 13:12, 15:24, 16:8, 16:19, 20:4, 20:6,

21:21, 23:8
**transfer** [1] - 15:7
**transpired** [1] - 7:1
**transpiring** [1] - 9:3
**true** [1] - 18:8
**try** [1] - 12:22
**trying** [2] - 10:25, 20:20
**turn** [2] - 11:4, 16:7
**turned** [1] - 6:8
**two** [4] - 7:15, 17:6, 20:20, 24:13
**type** [2] - 17:11, 22:9
**types** [1] - 11:5

**U**

**U.S** [1] - 1:5
**uncommon** [2] - 4:13, 4:15
**under** [2] - 13:1, 13:16
**underlying** [3] - 5:6, 6:10, 23:20
**undisputed** [2] - 10:25, 11:2
**unequivocally** [1] - 7:10
**Union** [3] - 3:22, 17:12, 18:5
**UNITED** [1] - 1:1
**United** [1] - 1:11
**unless** [1] - 13:24
**up** [4] - 10:6, 10:18, 18:2, 18:3
**upcoming** [1] - 24:14
**update** [1] - 7:1

**V**

**various** [3] - 3:16, 10:15, 21:4
**vendor** [5] - 7:5, 12:15, 18:9, 18:10, 18:12
**vendors** [3] - 4:21, 7:13, 20:8
**versa** [1] - 8:13
**version** [1] - 2:23
**versus** [2] - 2:3, 8:18
**vice** [1] - 8:13
**vice-versa** [1] - 8:13
**view** [1] - 3:18
**violate** [1] - 15:25
**violates** [5] - 13:17, 21:24, 22:1, 22:3, 22:11
**violation** [1] - 14:3
**violative** [2] - 22:15, 22:16
**vis** [6] - 19:12, 20:3, 23:20
**vis-a-vis** [3] - 19:12, 20:3, 23:20

**W**

**waive** [1] - 21:5
**wants** [4] - 2:14, 9:8, 9:9, 23:24
**web** [3] - 4:12, 16:11, 17:13
**week** [1] - 24:18
**weeks** [5] - 24:4, 24:13, 24:17, 24:19, 24:20

**weight** [1] - 3:23
**Western** [3] - 3:22, 17:12, 18:5
**whatsoever** [1] - 16:20
**wherein** [1] - 14:20
**wholly** [2] - 16:16, 20:5
**win** [2] - 16:9, 16:10
**wishes** [2] - 9:1, 18:24
**words** [3] - 4:9, 4:22, 14:16
**worth** [4] - 20:17, 21:1, 21:4, 21:6
**wrote** [2] - 3:10, 5:2

# Y 

**YORK** [1] - 1:1
**York** [4] - 1:16, 1:20, 1:24